

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Homer Garrison, Jr., Director
Department of Public Safety
Camp Mabry
Austin 9, T e x a s

Dear Sir:

Opinion No. O-6759
Re:  Authority of the Department
     of Public Safety to secure
     plot of land and erect radio
     broadcasting station on same
     out of the general appropria-
     tion for the years ending
     August 31, 1947.

We acknowledge receipt of your opinion request dated August 1, 1945, concerning the above matter, which reads as follows:

"This department is contemplating obtaining a plot of ground from the City of Arlington, Texas, for the sum of $1.00 and other considerations, on which to erect a Department Radio Station. The City of Arlington has told us that they will deed us the property for $1.00 if we will stipulate in the deed that the property is to be used by the Department for the installation of a Radio Broad-casting Station, and if in the event the Depart-ment should desire to move this Radio Station that the land will revert back to the City of Arlington. The erection of the building and the radio trans-mitting antenna will cost approximately five or six thousand dollars.

"We desire to know if we could, according to law and under our Appropriation Bill, secure this plot of land and erect the Radio Broadcasting Sta-tion as set forth above."

Articles 4413 (1), 4413 (2), 4413 (4), 4413 (13) and 4413 (15), Revised Civil Statutes of Texas, provide as follows:

"Art. 4413 (1). There is hereby created a
Department of Public Safety of the State of Texas,
hereinafter designated as 'the Department,' in
which is vested the enforcement of the laws pro-
tecting the public safety and providing for the
prevention and detection of crime. The Depart-
ment shall have its principal office and head-
quarters in the City of Austin, where all of its
records shall be kept."

"Art. 4413 (2). The control of the Depart-
ment is hereby vested in the Public Safety Com-
mission, hereinafter designated as 'the Commission,'
which shall consist of three citizens of this
State." * *"

"Art. 4413 (4). The Commission shall form-
ulate plans and policies for the enforcement of
the criminal laws and of the traffic and safety
laws of the State, the prevention of crime, the
detection and apprehension of violators of the
laws, and for the education of the citizens of
the State in the promotion of public safety and
law observance."

Art. 4413 (13). There is hereby created,
as an integral part of the Department, a Head-
quarters Division, consisting of the Bureaus
of Identification and Records, Communications,
Intelligence and Education. With the advice
and consent of the Commission, the Director
shall employ such chiefs, experts, operators,
instructors and assistants as may be necessary
for the operation of this Division and the
several Bureaus therein."

"Art. 4413 (15). 1. It shall be the duty of
the Director with the advice and consent of the
Commission to name the Chief of the Bureau of
Communications.

"2. This Bureau may, when funds are provided, install and operate a police radio broadcasting system for the broadcasting information concerning the activities of violators of the law, and for the directing of the activities and functions of the law enforcement agencies of the State, the counties and the municipalities. It shall cooperate with county and municipal police authorities and with police radio stations, in this State and in other States.

"3. * * *

"4. This Bureau shall provide for the rapid exchange of information, concerning the commission of crimes and the detection of violators of the law, between the law enforcement agencies of this State, its counties and municipalities and other states and the national government."

In Opinion No. 0-5100, rendered by this department, which holds that the Department of Public Safety has authority to purchase suitable land on which to erect a radio broadcasting station, and pay for same out of its appropriations, after quoting the above Articles of the Revised Civil Statutes, we say:

"The statutes above quoted authorize the installation and operation of a police radio broadcasting system for the purpose of preventing crime, detecting and apprehending law violators, and for the directing of the activities and functions of the law enforcement agencies of the State, the counties and the municipalities. Thus, the Department of Public Safety could purchase suitable land on which to install and operate said radio station as a part of said authorized broadcasting system with moneys appropriated for the installation and equipment of such a system; first, if appropriations of the department are broad enough to cover such a purchase; and second, if such a purchase could be designated a necessary and incidental expense in carrying out the power granted to the department to install such a system.

"We think such a purchase is authorized by the General Appropriation Bill for the two-year period ending August 31, 1943, known as Senate Bill No. 423, p. 1221, 47th Leg., 1941, wherein it provides for an annual appropriation for the Department of Public Safety, Main Division, designated as item 106, as follows:

"'106. Postage, supplies, arms, wire communication, radio equipment, radio supplies, printing and contingent expenses; hospitalization and medical services when injured in line of duty, funeral expenses when death results from injuries received in line of duty; surety bonds, books, all necessary expenses of operating a police training school at Camp Mabry for training peace officers generally and members of this department, and any other necessary departmental expenses, including equipment . . . . . . $65,900.00.'

"We have underscored the words 'any other necessary departmental expenses.' Under the emergency circumstances quoted in your letter the purchase of suitable land appears to be necessary and incidental to the establishment of an efficient broadcasting system; suitable land in this respect might possibly be regarded as part of the necessary radio equipment, and the expense for obtaining same may properly be regarded as one of these necessary departmental expenses provided for in the above quoted item 106."

The exact language of item 106 of Senate Bill No. 423, General Appropriation Bill for the two-year period ending August 31, 1943, which provides for annual appropriations for the Department of Public Safety is found in item 93 of Senate Bill No. 317, General Appropriation Bill for the two-year period ending August 31, 1947, which provides for annual appropriations for the Department of Public Safety.

The above opinion of this department is supported by the decisions of the Supreme Court of Texas in the case of Herring vs. Houston National Exchange Bank, 296 S. W. 1051 and in the case of Terrill vs. Sparks, 104 Tex. 191.

In view of Opinion No. O-3100, rendered by this department, and the authorities cited therein, it is our opinion that the Department of Public Safety is authorized to secure the plot of land and erect a radio broadcasting station on same out of the general appropriations for said department, as indicated by item 55 of Senate Bill 317, for the two-year period ending August 31, 1947. We, therefore, answer your question in the affirmative.

The stipulation, "that the property is to be used by the department for the installation of a radio broadcasting station, and if in the event the department should desire to move this Radio Station that the land will revert back to the City of Arlington", is a contractual question and it is suggested that the stipulation also provide that the department shall have the right to remove any and all buildings, fixtures and equipment placed upon said land by the department, if, and when, it abandons or moves the Radio Broadcasting Station off of said land.

It is not the intention of this department to pass upon the title of the plot of land in question and the proposed deed, or conveyance, of same from the City of Arlington, Texas, to the Department of Public Safety. The validity of the title and proposed deed, or conveyance, can be best determined by an examination of the abstract of title to said land and by an inspection of the proposed deed, or conveyance, together with a copy of the charter of the City of Arlington, and the resolutions and orders of said city incident to said deed, or conveyance.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Jesse Owens
Assistant

APPROVED AUG 14, 1945

FIRST ASSISTANT
JO: ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN